OPINION. Opper, Judge: Whether the salaries paid to petitioner’s officer-stockholders were reasonable is a question of fact. We have disposed of it in our findings. No one factor was decisive in the formulation of our conclusion. The salaries paid in prior years, the nature of the duties performed, the increase in the demands of the business upon the principal officers, the success of petitioner’s operations, and petitioner’s dividend history are some of the aspects to which consideration has been given. J. J. Hart, Inc., 9 T. C. 135, 140; Wagegro Corp., 38 B. T. A. 1225; Miller Manufacturing Co., Inc. (CCA-4), 149 Fed. (2d) 421; 4 Mertens, “Law of Federal Income Taxation,” section 25.51. The upshot, as our findings show, is that while we agree with petitioner that respondent’s determination has been too drastic, we likewise view the payments actually made as excessive. A number of sub-issues are interwoven in the controversy under section 721 (a) (2) (C). We conclude in the first place, although not without reservation, that petitioner did in fact engage during the base period in research and development leading to the creation of its principal product. W. B. Knight Machinery Co., 6 T. C. 519; Keystone Brass Works, 12 T. C. 618. The remaining matters concern the method of computation of the net abnormal income so realized which is attributable to other years. We have found as a fact the figures which seem to us appropriate for use in the computation of this amount. Respondent’s contention that certain “direct costs and expenses” shown by petitioner’s books should be deducted, we think justifiable, and have so held. See Sodbar Co., 7 T. C. 89. We come to a similar conclusion with respect to adjustments to the net sales figure, including the deduction of the renegotiation rebate which seems to us to have been either an offset against gross sales or an exclusion from gross income. See Baltimore Foundry & Machine Corp., 7 T. C. 998; cf. National Builders, Inc., 12 T. C. 852. In either event the effect on the ultimate figures would be the same. An additional controversy deals with the necessity of attributing some part of the petitioner’s income from the developed product to its activities of manufacture and sale, as opposed to pure development. See Regulations 112, section 35.721-7. Although as a matter of law we assume for present purposes that such a distinction may be valid, cf. Rochester Button Co., 7 T. C. 529, with Morrisddle Coal Mining Co., 13 T. C. 448; see Phelps, “Relief under Section 721” Taxes, March 1950; the presentation of the case by respondent seems to us to preclude it here. On the previous issue dealing with the reasonableness of the salaries paid, respondent insists that a minimum of weight be given to the activities of petitioner’s principal officers in the expansion of the business. If their services were as negligible as respondent contends in this connection, we are unable to conclüde that the operations under their direction of manufacture and sale contributed measurably to the abnormal income. Furthermore, our deduction of the renegotiation rebate tends to eliminate the factor of increased prices. The Toledo Engineering Co., 14 T. C. 765. In W. B. Knight Machinery Co., supra, 534, the business improvement factor, 2.6152, was applied “to petitioner’s net abnormal income of $72,053.61, * * * [leaving] $44,501.76 * * * due to improved business conditions and * * * $27,551.85 * * * attributed to the expenditures which petitioner made during the period 1936 to 1940 in bringing its machines * * * to commercial production.” (Emphasis added.) In the present proceeding respondent seeks to apply the business improvement factors to abnormal income as distinguished from net abnormal income. Nothing in this record convinces us that what respondent concedes to be a novel method of computing the portion of net abnormal income due to business improvement is necessary to achieve a correct ultimate figure. On authority of the Knight Machinery Co. case, supra, this contention is rejected. On the final question, payment of the contested $4,000 in 1941 to defray travel and commission expenses was substantiated by testimony of petitioner’s treasurer. In the absence of rebuttal evidence casting doubt upon the issue, deductibility of the $4,000 as ordinary and necessary business expense in 1941 is allowed. Reviewed as to section 721 (a) (2) (C) by the Special Division. Decision will be entered under Rule 50.